## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MARK S. MAYER,
an individual,

                                      Case No.: 6:20-cv-2283

         Plaintiff,

v.

HOLIDAY INN CLUB
VACATIONS INCORPORATED,
f/k/a ORANGE LAKE
COUNTRY CLUB, INC.,
a foreign for-profit corporation, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,

         Defendants.

_____/

## COMPLAINT

      **COMES NOW**, Plaintiff, MARK S. MAYER (hereinafter, "Plaintiff"), by and through

the undersigned counsel, and hereby sues Defendants, HOLIDAY INN CLUB VACATIONS

INCORPORATED, f/k/a ORANGE LAKE COUNTRY CLUB, INC.  (hereinafter, "HICV")

and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") (hereinafter

collectively, "Defendants").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

      1.      This is an action brought by an individual consumer for damages for HICV's

violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*.

(hereinafter, the "FCRA") wherein HICV improperly credit-reported and subsequently verified

objectively-inaccurate information related to a consumer loan account allegedly owed to HICV

on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Experian.  More specifically, HICV inaccurately reported a derogatory tradeline account—with an alleged balance and past-due balance owed—and continued its reporting after Plaintiff advised HICV and Experian that Plaintiff did not owe a balance to HICV.

2.      Furthermore, this is an action for damages for Experian's violations of the FCRA wherein Experian failed to reasonably re-investigate and continued to incorrectly report the subject tradeline account furnished by HICV despite Plaintiff's repeated disputes to Experian explaining that the transaction between Plaintiff and HICV was terminated and therefore Plaintiff did not owe a balance to HICV.

### JURISDICTION, VENUE & PARTIES

3.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

4.      Defendants are subject to the jurisdiction of this Court as HICV and Experian each regularly transact business in this District.

5.      Venue is proper in this District the acts and transactions described herein occur in this District and HICV's principal place of business is located in this District.

6.      At all material times herein, Plaintiff is a natural person residing in Lorain County, Ohio.

7.      At all material times herein, HIVC is a foreign for-profit corporation existing under the laws of the State of Delaware with its principal place of business located at 9271 S. John Young Parkway, Orlando, Florida 32819.

8.      At all material times herein, Experian is a for-profit corporation existing under

the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## FCRA STATUTORY STRUCTURE

9.      Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

10.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.  *Id.* at § e(b) (emphasis added).

11.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

12.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

3

13.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

14.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

15.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

16.     Under the FCRA, any person who is negligent in failing to comply with any

requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

17.     At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c), because he is an individual and allegedly obligated to pay a debt.

18.     At all material times herein, HICV, itself and through its subsidiaries, regularly services consumer credit and credit-reports information associated with the same in Orange County, Florida.

19.     At all material times herein, HICV is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

20.     At all material times herein, HIVC reports certain derogatory information concerning an alleged consumer debt, including but not limited to, an alleged balance due from Plaintiff on a consumer loan related to a personal timeshare interest, referenced by account number ending -9828 (hereinafter, the "Alleged Debt" or the "Account").

21.     At all material times herein and as further described below, Plaintiff rescinded his consent to continue performing the terms of a written agreement entered into between Plaintiff and HICV as allowed by such written agreement.

22.     At all material times herein, after Plaintiff elected to terminate his future obligations under the written agreement, Plaintiff did not owe a balance (or past-due balance) to HICV and therefore HICV could not possibly credit report an amount owed or past-due from

Plaintiff.

23.     Notwithstanding, HICV inaccurately reported the tradeline account associated with the Alleged Debt (i.e., the Account) as "open" with an outstanding balance and as past-due resulting in Experian reporting the Account as a derogatory, negative, or adverse tradeline account in Plaintiff's credit reports and credit file.

24.     At all material times herein, HICV furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy the alleged balance, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

25.     At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian disburses such consumer reports to third parties under contract for monetary compensation.

26.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

27.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

## CREATION AND CANCELLEATION OF THE ACCOUNT

28.     On or about September 15, 2014, Plaintiff entered into a written agreement with

6

HICV seeking to acquire a personal property timeshare membership in HICV's Cape Caribe Resort located in Cape Canaveral, Florida (hereinafter, the "Agreement").  Please see attached a true and correct copy of the contractual agreement and enclosed terms and conditions labeled as Composite Exhibit "A."

29.     Pursuant to the Agreement, the transaction is not deemed closed until the deed is recorded in Plaintiff's name.  *See* Ex. A at pp. 4-5, ¶ 7(a).

30.     Additionally, the transaction is not deemed closed until Plaintiff makes the first three (3) timely payments under the Agreement, at which time the deed should be recorded by HICV.  *Id*. at ¶ 7(b).

31.     Pursuant to the Agreement, HICV asserted the "ESTIMATED CLOSING DATE" as May 14, 2015.  *Id*. at p. 2.

32.     Plaintiff's first payment under the Agreement was due by November 14, 2014. *Id*. at p. 3.

33.     The Agreement also states that time is of the essence with respect to HICV's performance, and upon HICV's default of any term of the Agreement, Plaintiff may elect to rescind and terminate the Agreement.  *Id*. at p. 6, ¶ 15.

34.     Additionally, the Agreement includes a clause stating that upon Plaintiff's default of any term of the Agreement, HICV shall retain all monies paid by Plaintiff until the date of default as liquidated damages.  *Id*. at p. 5, ¶ 13.

35.     On or about July 13, 2015, almost two (2) months after the estimated closing date, HICV finally recorded the corresponding deed associated with the Account.

36.     Between November 2014 and June 2017, Plaintiff made timely payments to

HICV under in compliance with the Agreement.

37.     In or around July 2017, Plaintiff stopped making payments to HICV on the Alleged Debt.

38.     As such, in or around July 2017, Plaintiff elected to breach the Agreement and allowed HICV to retain all monies previously paid as its sole remedy available under the Agreement.

39.     On or before January 15, 2019, Plaintiff retained Finn Law Group, P.A. (hereinafter, "FLG") as his legal counsel with respect to the Alleged Debt.

40.     On or about January 15, 2019, Plaintiff sent a letter to HICV via his legal counsel regarding the Agreement and the Alleged Debt (hereinafter, "First Notice and Rescission").  Please see attached a true and correct copy of said First Notice of Rescission sent via e-mail and U.S. mail labeled as Exhibit "B."

41.     On or about January 15, 2019, HICV received the First Notice of Rescission.

42.     Specifically, the First Notice of Rescission disputed the validity of the sales transaction creating the Account as a result of fraudulent representations made by HICV's employees and/or representatives at the time of the sale, advised that Plaintiff considered the transaction null and void, and advised that Plaintiff no longer intended to make any payments to HICV on the Account.  *See* Ex. B.

43.     As such, as of January 15, 2019, Plaintiff provided HICV explicit notice that he considered the Agreement null and void, that he elected to terminate the Agreement, and he allowed HICV to retain all money previously paid as provided by the Agreement.

44.     To the extent that Plaintiff owed any balance to HICV as of January 15, 2019,

Plaintiff rescinded the Agreement and allowed HICV to retain any monies previously paid as liquidated damages pursuant to the Agreement drafted by HICV. *See* Ex. A at p. 5, ¶ 13.

45.     On or about November 4, 2019, Plaintiff sent *another* letter to HICV via his legal counsel regarding the Agreement and the Alleged Debt (hereinafter, "Second Notice of Rescission"). Please see attached a true and correct copy of said Second Notice of Rescission sent via e-mail and U.S. mail labeled as Exhibit "C."

46.     On or about November 4, 2019, HICV received the Second Notice of Rescission.

47.     The Second Notice of Rescission *again* disputed the validity of the sales transaction creating the Account as a result of fraudulent representations made by HICV's employees and/or representatives at the time of the sale, *again* advised that Plaintiff considered the transaction null and void, *again* advised that Plaintiff no longer intended to make any payments to HICV on the Account, and explicitly quoted the clause from the Agreement which states that "**the parties hereto shall be relieved from all obligations**" if Plaintiff breaches any term of the Agreement. *See* Ex. C (emphasis in original) and Ex. A at p. 5, ¶ 13.

48.     As such, as of November 4, 2019, Plaintiff *twice* provided HICV explicit notice that he considered the Agreement null and void, that he elected to terminate the Agreement, and he allowed HICV to retain all money previously paid as provided by the Agreement.

49.     Notably, as of the date of this Complaint, Plaintiff has not received any communications from HICV requesting or demanding payment on the Alleged Debt in approximately three (3) years.

**<u>DEFENDANTS' CREDIT REPORTING OF THE DEBT</u>**

50.     On or about August 17, 2019, Plaintiff obtained a copy of his consumer disclosure report from Experian.

51.     Despite HICV knowing Plaintiff terminated the contract permitting HICV to retain any monies paid as its exclusive remedy, despite Plaintiff sending a letter to HICV advising that Plaintiff considered the Agreement null and void, and despite HICV knowing that it had not demanded or requested payment from Plaintiff on the Alleged Debt in over three (3) years, HICV reported the Account to Experian as a late, derogatory, or adverse account including a balance due, a balance past-due, and late payment information.

## PLAINTIFF'S DISPUTES

52.     On or about January 8, 2020, Plaintiff sent a letter to Experian disputing Defendants' credit reporting of the Account, advising that the Agreement was rescinded and terminated, and demanding that the tradeline Account associated with the Alleged Debt be updated to reflect the Account was closed as of July 2017 with a zero dollar ($0.00) balance due and past-due (hereinafter, "First Dispute").  Please see attached a true and correct copy of said First Dispute and enclosures labeled as Composite Exhibit "D."

53.     Experian received Plaintiff's First Dispute.

54.     Experian communicated Plaintiff's First Dispute to HICV.

55.     HICV received Plaintiff's First Dispute from Experian.

56.     On or about February 6, 2020, Experian sent a letter to Plaintiff in response to his First Dispute.  Please see attached a true and correct copy of said letter labeled as Exhibit "E."

57.     Despite Plaintiff's First Dispute explaining that the Agreement was rescinded

and terminated, Experian's letter stated that HICV "has certified to Experian that the information is accurate" and HICV continued to report the Account on Plaintiff's credit reports and in Plaintiff's credit file was a derogatory, negative, and/or adverse tradeline account and with a balance due in excess of $11,000.00.  *See* Ex. E at pp. 2 and 4.

58.     On or about March 5, 2020, Plaintiff sent *another* letter to Experian *again* disputing Defendants' credit reporting of the Account, *again* advising that the Agreement was rescinded and terminated, and *again* demanding that the tradeline Account associated with the Alleged Debt be updated to reflect the Account was closed as of July 2017 with a zero dollar ($0.00) balance due and past-due (hereinafter, "Second Dispute").  Please see attached a true and correct copy of said Second Dispute and enclosures labeled as Composite Exhibit "F."

59.     Experian received Plaintiff's Second Dispute.

60.     Experian communicated Plaintiff's Second Dispute to HICV.

61.     HICV received Plaintiff's Second Dispute from Experian.

62.     On or about April 7, 2020, Experian sent a letter to Plaintiff in response to his Second Dispute.  Please see attached true and correct copies of relevant pages from said letter labeled as Exhibit "G."

63.     Despite Plaintiff's Second Dispute *again* explaining that the Agreement was rescinded and terminated, Experian's letter *again* stated that HICV "has certified to Experian that the information is accurate" and HICV continued to report the Account on Plaintiff's credit reports and in Plaintiff's credit file was a derogatory, negative, and/or adverse tradeline account and with a balance due in excess of $11,000.00.  *See* Ex. G at pp. 2 and 5.

64.     On or about April 23, 2020, Plaintiff sent *another* letter to Experian *again*

disputing Defendants' credit reporting of the Account, *again* advising that the Agreement was rescinded and terminated, and *again* demanding that the tradeline Account associated with the Alleged Debt be updated to reflect the Account was closed as of July 2017 with a zero dollar ($0.00) balance due and past-due (hereinafter, "Third Dispute").  Please see attached a true and correct copy of said Third Dispute and enclosures labeled as Composite Exhibit "H."

65.     Experian received Plaintiff's Third Dispute.

66.     Experian communicated Plaintiff's Third Dispute to HICV.

67.     HICV received Plaintiff's Third Dispute from Experian.

68.     On or about May 27, 2020, Experian sent a letter to Plaintiff in response to his Third Dispute.  Please see attached a true and correct copy of said letter labeled as Exhibit "I."

69.     Despite Plaintiff's Third Dispute *again* explaining that the Agreement was rescinded and terminated, Experian's letter *again* stated that HICV "has certified to Experian that the information is accurate" and HICV continued to report the Account on Plaintiff's credit reports and in Plaintiff's credit file was a derogatory, negative, and/or adverse tradeline account and with a balance due in excess of $11,000.00.  *See* Ex. I at pp. 2 and 4.

70.     As a result of Defendants' conduct, actions, and inactions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, and confusion, believing that despite Plaintiff and HICV cancelling and terminating the Agreement, and despite Plaintiff's repeated dispute efforts notifying Defendants of the same, Plaintiff must simply endure Defendants' erroneous and inaccurate reporting of the Account, and he was continually evaluated for credit using consumer reports that inaccurately reported the Account as a negative, derogatory, and/or adverse tradeline account.

71.     Plaintiff dealt with the stress and anxiety of feeling hopeless and was deterred from credit applications, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account and that credit applications would not be successful and only harm his credit score.  In fact, Plaintiff suffered additional actual damages in the form of damage to his credit reputation.

72.     Plaintiff retained Swift, Isringhaus & Dubbeld, P.A. as well as Finn Law Group, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

73.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

### COUNT ONE:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)

Plaintiff re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

74.     HICV is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to correctly report the Account on Plaintiff's credit reports after re-investigating Plaintiff's disputes.

75.     As described above, despite receiving notice of Plaintiff's disputes via

Experian, HICV willfully and/or negligently failed to request that Experian update the Account and reported erroneous and inaccurate credit information regarding the Account to Experian.

76.     Specifically, after receiving notice of Plaintiff's repeated disputes from Experian, HICV inaccurately reported the Account as late, past-due, and with a total balance due in excess of $11,000.00 which resulted in the Account being reported by Experian as a negative, derogatory, and/or adverse tradeline account harming Plaintiff's credit score and credit reputation.

77.     HICV reported and verified the above-referenced erroneous information despite Plaintiff never owing any money to HICV beyond what he paid HICV though 2017 pursuant to the terms of the Agreement.

78.     HICV's refusal to update the tradeline Account to reflect a zero dollar balance due or past due since July 2017 was intentionally, willfully, and knowingly done.

79.     HICV's re-investigations were not conducted in good faith.

80.     HICV's re-investigations were not conducted reasonably.

81.     HICV's re-investigations were not conducted using all information reasonably available to HICV.

82.     As a result of HICV's conduct, actions, and inactions, Plaintiff was not offered the best possible loan terms and interest rates and was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and erroneous reporting of the Account, and Plaintiff did not wish to further damage his credit score with futile credit inquires.

83.     Additionally, as a result of HICV's conduct, actions, and inactions, Plaintiff

suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff and HICV cancelling and terminating the Agreement, and despite Plaintiff's repeated dispute efforts notifying Defendants of the same, Plaintiff must simply endure Defendants' erroneous and inaccurate reporting of the Account, and he was continually evaluated for credit using consumer reports that inaccurately reported the Account as a negative, derogatory, and/or adverse tradeline account.

84.    HICV's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

85.    HICV's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)

Plaintiff re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

86.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

87.    Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports

regarding the Account.

88.     Specifically, despite Plaintiff never owing any money to HICV beyond what he paid through 2017, and despite Plaintiff *repeatedly* advising Experian of the same, Experian reported and purportedly verified the Account as belonging to Plaintiff and reported the Account as late, past-due, and with a total balance due in excess of $11,000.00 which resulted in the Account being reported by Experian as a negative, derogatory, and/or adverse tradeline account harming Plaintiff's credit score and credit reputation.

89.     Further, Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Experian credit reports and credit file.

90.     For example, despite Plaintiff's repeated disputes of the inaccuracies in his credit reports no less than three (3) times, Experian did not request any documents from HICV supporting HICV's reporting of the Account and blatantly ignored the documents submitted by Plaintiff with his repeated disputes.

91.     Such reporting of the Account is false and evidences Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

92.     As a result of Experian's conduct, actions, and inactions, Plaintiff was not offered the best possible loan terms and interest rates and was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and erroneous reporting of the Account, and Plaintiff did not wish to

further damage his credit score with futile credit inquires.

93.     Additionally, as a result of Experian's conduct, actions, and inactions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff and HICV cancelling and terminating the Agreement, and despite Plaintiff's repeated dispute efforts notifying Defendants of the same, Plaintiff must simply endure Defendants' erroneous and inaccurate reporting of the Account, and he was continually evaluated for credit using consumer reports that inaccurately reported the Account as a negative, derogatory, and/or adverse tradeline account.

94.     Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

95.     Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)**

Plaintiff re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

96.     Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit

reports and credit files; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

97.     Specifically, Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

98.     For example, rather than conduct its own, independent re-investigations, Experian solely relied on HICV's blanket and parroted assertions that Plaintiff was responsible for the Account and that HICV was permitted to report the account with significant balances due and past-due.

99.     Experian did not request any documents from HICV corroborating information furnished and verified by HICV to Experian regarding Plaintiff and the Account in response to any of Plaintiff's disputes, and Experian wholly ignored the documents submitted by Plaintiff with his repeated disputes.

100.    Despite Plaintiff repeatedly advising Experian the Agreement was cancelled and therefore Plaintiff did not owe any money on the Account, Experian continued to report the Account as late, past-due, and with a total balance due in excess of $11,000.00 which resulted in the Account being reported by Experian as a negative, derogatory, and/or adverse tradeline account harming Plaintiff's credit score and credit reputation.

101.    Overall, as of the date of this Complaint, Experian continues to inaccurately report the Account in Plaintiff's Experian credit reports and credit file as with a balance due as

well as derogatory, late payment information.

102.    As such, Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Experian failed to subsequently update and delete the inaccurate Account information in Plaintiff's credit reports and credit files.

103.    Such reporting is false and evidences Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

104.    Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

105.    Experian's reinvestigations merely copied and relied upon the inaccurate information conveyed by HICV.

106.    Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

107.    Experian's reinvestigation procedures are unreasonable.

108.    Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian.

109.    Experian's reinvestigations were *per se* deficient by reason of these failures in Experian's reinvestigations of Plaintiff's disputes and the Account.

110.    As a result of Experian's conduct, actions, and inactions, Plaintiff was not offered the best possible loan terms and interest rates and was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and erroneous reporting of the Account, and Plaintiff did not wish to

further damage his credit score with futile credit inquires.

111.    Additionally, as a result of Experian's conduct, actions, and inactions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff and HICV cancelling and terminating the Agreement, and despite Plaintiff's repeated dispute efforts notifying Defendants of the same, Plaintiff must simply endure Defendants' erroneous and inaccurate reporting of the Account, and he was continually evaluated for credit using consumer reports that inaccurately reported the Account as a negative, derogatory, and/or adverse tradeline account.

112.    Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against HICV and Experian for maximum statutory damages for violations of the FCRA;

b.    Judgment enjoining HICV from engaging in further conduct in violation of the FCRA;

c.    Actual damages in an amount to be determined at trial;

d.    Compensatory damages in an amount to be determined at trial;

e.    Punitive damages in an amount to be determined at trial;

f.      An award of attorney's fees and costs; and

g.      Any other such relief the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right.

## **SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

/s/ *Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
10460 Roosevelt Blvd. North
Suite 313
St. Petersburg, FL 33716
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com

*~and~*

**FINN LAW GROUP, P.A.**
**J. Andrew Meyer, Esq., FBN 56766**
7431 114th Avenue, Suite 104
Largo, FL 33773
Phone: (855) 346-6529
Fax: (727) 475-1494

ameyer@finnlawgroup.com
pleadings@finnlawgroup.com
*Counsel for Plaintiff*